UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 2:11-CR-69-DCR-REW |
| | ) | No. 2:15-CV-7397-DCR-REW |
| v. | ) | |
| | ) | |
| VINCENT NUNLEY, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Vincent Nunley, is a federal inmate. DE #388 (Motion), at 1. On April 3, 2015,[1] Nunley filed a *pro se*[2] motion, accompanied by a brief, under 28 U.S.C. § 2255. *See generally id.* The United States responded in opposition. DE #397 (Response). Movant replied and attached two exhibits. DE #398 (Reply). Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief and issue **NO** Certificate of Appealability.

I.      **BACKGROUND INFORMATION**

On October 26, 2011, the United States, via DEA Task Force Agent Derek A. Boyd, filed a criminal Complaint and affidavit, charging Nunley with conspiring to

_____

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Nunley affirmed under penalty of perjury that he executed and mailed, per prison mail, the motion on April 3, 2015. DE #388, at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

distribute over 500 grams of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. DE #1 (Complaint). A federal grand jury subsequently indicted Nunley on one count of conspiring to knowingly and intentionally distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and one count of knowing and intentional possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). DE ##16 (Indictment); 76 (Superseding Indictment). Nunley pleaded guilty to the conspiracy count, pursuant to a plea agreement, on June 18, 2012. DE ##226 (Rearraignment Minute Entry); 317 (Plea Agreement); 318 (Sealed Supplement). Judge Reeves sentenced Nunley on October 1, 2012. DE #315 (Sentencing Minute Entry). Movant received a 252-month prison term followed by 10 years of supervised release. DE #319 (Judgment). The Judgment included a monetary forfeiture. *Id.* at 6. Nunley appealed; the Sixth Circuit affirmed. DE #358 (Opinion); *United States v. Nunley*, 559 F. App'x 470 (6th Cir. 2014). On April 3, 2015, Nunley timely submitted his § 2255 motion to vacate. DE #388. The Government responded. DE #397. Nunley replied. DE #398. The motion stands ripe for review. The Court wholly rejects Movant's claims and recommends dismissal with no Certificate of Appealability.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits;

or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.   ANALYSIS

In his § 2255 motion, Nunley makes 8 often overlapping arguments for relief, organized here as he presents them: that (1) the Government breached the plea agreement by forfeiting a particular asset, 1600 Pelham Place (the theory also includes a corresponding ineffective assistance of counsel (IAC) claim); (2) the Government breached the plea agreement by stating such forfeiture would occur in a separate proceeding (again, a claim made along with an IAC claim); (3) the Government did not follow 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2 (joined with another corresponding

3

IAC claim); (4) counsel was ineffective (largely duplicative of allegation 1) because counsel did not argue plea agreement breach in the District or Circuit Courts; (5) § 853(p) does not authorize joint and several liability (with a corresponding IAC claim); (6) counsel was ineffective regarding § 853's definition of "proceeds"; (7) counsel was ineffective when counsel said Nunley's property was subject to direct forfeiture; and (8) the guilty plea was not knowing and voluntary. Under this clear and conclusive record, no theory justifies relief under 28 U.S.C. § 2255. Nunley's entire claim centers on the allegedly improper forfeiture of a particular piece of realty, the Pelham Place property. While Nunley undoubtedly hoped to spare that property, his extensive criminality exposed it to forfeiture; he validly pleaded guilty, did not appeal the forfeiture, and has no valid claim for relief in this context.

### A.    Nunley's Guilty Plea was Knowing and Voluntary (Argument 8)

Nunley argues that his "guilty plea was not knowing and voluntary because it was induced by false promises and was illusory[.]" DE #388-1, at 13 (emphases removed). His only particular argument concerns the prosecutor's statement that "[i]t's not his [Nunley's] responsibility to raise a million dollars. We [the United States] have to try and find that money to satisfy" the judgment. *Id.*; *see also* DE #331 (Rearraignment Transcript), at 15. Although Nunley makes this argument last, the Court considers it first due to its potential impact on other claims. The United States responded in opposition. DE #397, at 3-6. Nunley replied. DE #398, at 11.

Nunley's argument wholly fails. First, the United States has acted consistently with the referenced prosecutor statement; it was not a false promise. By pursuing the money judgment against Nunley's earnings, the Government did what it said it would do:

"try and find that money to satisfy" the judgment. Made in context of explaining that money judgment satisfaction would not be a condition of supervised release, the prosecutor, at most, meant that Nunley would not be revoked and imprisoned for failing to satisfy the money judgment, not that the United States could not seek money judgment satisfaction through any available means. After thorough explanation of collection mechanics at rearraignment, including discussing the possible forfeiture of any Defendant asset(s)—Pelham Place included—to satisfy the money judgment, the Court asked Nunley if he wished to proceed; he responded, "Yes." DE #331, at 17. Nunley affirmatively allocuted and did not seek to withdraw his plea at sentencing. As this Recommendation later explains, Nunley's other allegations of "false promises" (which he here leaves unelaborated) are unfounded.

Second, Nunley admitted that the plea agreement "is the only agreement [he] ha[d] with the government in the case." *Id.* at 18; *see also id.* at 25 (affirming there were no outside promises and/or threats); DE #317 (Plea Agreement), at ¶ 11. The agreement, signed by Nunley, provides, "The Defendant . . . acknowledge[s] that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary." DE #317, at ¶ 13. By the terms of the agreement itself, and by virtue of Defendant's in-court statements at rearraignment (which were under oath) and sentencing, Nunley entered the plea agreement—his only agreement with the Government—knowingly and voluntarily.

Third, the Court has previously found, based on extended colloquy, that Nunley's plea was knowing and voluntary. DE #331, at 36 ("Mr. Nunley is fully competent and

capable of entering an informed plea. Further, his plea of guilty is a knowing and voluntary plea, which is supported by an independent basis in fact, containing the essential elements of the offense that has been charged in Count 1 of the superseding indictment."). Defendant affirmatively admitted his crime and pleaded guilty. *Id.* at 33 ("I sold drugs to Mr. Holt."), 35 ("[Y]ou are, in fact, guilty of that charge?" "Yes."), 36 ("I plead guilty."). While Nunley once stated that he felt "duped into signing this plea[,]" DE #330 (Sentencing Transcript), at 11, the Court reiterated: "While the defendant, again, blames others, claims that he was duped into signing the plea agreement, this Court has already determined that his entry into the plea agreement was voluntary, it was also knowing, and based upon the facts that establish this defendant was engaged in drug trafficking activities as alleged in the superseding indictment in the case." *Id.* at 20-21. Nunley here offers no new facts or developments to overcome or call into question the Court's two prior determinations that his plea was knowing and voluntary. Further, while the Sixth Circuit did not directly address plea voluntariness, it wrote, "the [district] court did not abuse its discretion by rejecting" "Nunley's claim that the court should have imposed a more lenient sentence because the Government 'duped him[.]'" *Nunley*, 559 F. App'x at 475. Nunley's effort to show improper plea inducement fails. Fully aware of the circumstances, he knowingly and voluntarily signed the agreement and pleaded guilty.

Judge Reeves ensured clear comprehension by Nunley of the precise effect of the monetary judgment and resultant jeopardy to all Nunley assets. Before pleading guilty, Nunley obviously perceived that if his assets were insufficient to satisfy the judgment, Pelham Place was at risk for forfeiture as a substitute asset. Nunley's crime created this scenario, and he validly entered a plea resolving the prosecution.

### B.    Plea Agreement Breach

#### 1.    The Government Did Not Breach the Plea Agreement by Forfeiting 1600 Pelham Place (Argument 1)

Nunley argues that the Government "[b]reached Nunley's plea agreement . . . by forfeiting property it agreed not to forfeit both in the plea agreement and orally." DE ##388, at 4; 388-1, at 2-4. Nunley adds that "counsel rendered ineffective assistance in not raising [this argument] earlier or on appeal." DE #388, at 4.

The Government first argues that Nunley's collateral attack waiver blocks merits consideration of his arguments (though later responds in opposition on the merits). DE #397, at 2-6, 8. Nunley replied in opposition. DE #398, at 2-4, 5-6. In the plea agreement—into which Nunley knowingly and voluntarily entered—Movant unequivocally and unconditionally "waive[d] the right to attack collaterally the guilty plea, conviction, and sentence." DE #317, at ¶ 7. Nunley confirmed that he understood that he was giving up his collateral attack right. At rearraignment, the Court asked if Nunley understood that he was "giving up the right to file a separate lawsuit[] to challenge [the guilty plea, conviction, and sentence,] sometimes referred to as a habeas motion or a habeas proceeding." DE #331, at 30. Nunley responded, "Yes." *Id.* The Court reminded Nunley at sentencing that he "also waived the right to collaterally attack the guilty plea, conviction, and sentence in the case." DE #330, at 24.

At least other than "where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel[,]" "a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (enforcing appeal waiver); *see also United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005)

(same). *Acosta* distinguished "issues a defendant has validly agreed not to appeal or attack collaterally[] from those that go to the very validity of a guilty plea." 480 F.3d at 422; *see also United States v. Cole*, 599 F. App'x 236, 237 (6th Cir. 2015) (enforcing waiver but distinguishing cases alleging ineffective assistance of counsel); *but see Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) ("When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255.").

Here, Nunley argues (although the Court previously rejected) that his plea was not knowing and voluntary. Nunley fully reviewed the charges and discussed the case with counsel. DE #331, at 8. He confirmed he reviewed the plea agreement before signing it. *Id.* at 9-10. He confirmed that he understood the terms of the plea agreement. *Id.* at 10. The waiver is enforceable—and the Court enforces it—regarding the general substantive allegations of governmental failure to obey the law. However, because Nunley's IAC and plea agreement breach claims can fairly be interpreted as implicating the validity of the plea (or specifically the waiver provision), the Court will assess the merits of those allegations. *E.g.*, *United States v. Munoz*, 430 F. App'x 495, 498 (6th Cir. 2011) ("If the government materially breaches a plea agreement, then any appellate waiver contained in the agreement is unenforceable."). Additionally and alternatively, the Court will evaluate the merits of the otherwise waived claims. Ultimately, the waiver decision is not dispositive because Nunley's arguments are wholly contradicted by the record and the law and easily fail.

The Government did not breach the plea agreement by forfeiting 1600 Pelham Place. The agreement provides,

> The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Superseding Indictment and will execute any documents necessary for this forfeiture. The only exception to this forfeiture is that the United States is amending its request for a money judgment to the amount of $1,230,000 and withdrawing its request to forfeit real estate located at 1600 Pelham Place, Cincinnati, Ohio 45237. **The Defendant understands that the United States reserves the right to attempt to enforce the money judgment against all assets, including this real estate.**

DE #317, at ¶ 8 (emphasis added).

Nunley may raise alleged plea agreement breach in his § 2255 motion. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). "The Government's failure to adhere to its plea agreement in good faith has been held to implicate a defendant's due process rights." *Id.* Courts "use traditional contract law principles in interpreting and enforcing" plea agreements. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). "Ambiguities in a plea agreement are . . . construed against the government[.]" *Id.* at 360-61.

Nunley's argument fails based on the plain text of the agreement. The agreement, signed by him, explicitly contemplates that the Government may enforce the $1,230,000 money judgment by forfeiting any of his assets, including 1600 Pelham Place. DE #317, at ¶ 8. While the United States withdrew its request for direct real estate forfeiture, Defendant understood that his property, that parcel included, was still subject to forfeiture to satisfy the money judgment. *Nunley*, 559 F. App'x at 471 ("[T]he plea agreement made clear that Nunley understood that the United States reserved the right to attempt to enforce the money judgment against all assets, including this real estate." (internal

9

quotation marks and alterations removed)). Nunley did not object or respond to the Amended Preliminary Judgment of Forfeiture, DE #304, which set out a $1,230,000 money judgment and a "SUBSTITUTE ASSET" of 1600 Pelham Place. *See also* DE ##319 (Judgment), at 6 (ordering forfeiture of Nunley's interest in the $1,230,000 money judgment); 336 (Final Decree and Order of Forfeiture), at 2-3 (ordering seizure and lawful disposure of the forfeited 1600 Pelham Place); Fed. R. Crim. P. 32.2(b)(2)(B) (contemplating that parties may "suggest revisions or modifications" to the preliminary order of forfeiture).

The extended rearraignment colloquy, only here excerpted, removes any doubt that Nunley understood forfeiture mechanics and the likely fate of his property:

> MR. BRACKE [the prosecutor]: That's exactly right. There's a piece of real estate that was indicted. We agreed we're going to drop a specific claim for that real estate. However, as the Court has already indicated, **in an effort to enforce the money judgment, what we'll do is find assets**, and there might be a lien attached to this.
>
> . . .
>
> THE COURT: If you [Nunley] are unable to satisfy the amount of the money judgment, **the United States may seek to forfeit any assets that they can find that you may possess**, any interest in any assets that you might have. . . . But **if you agree with this, the United States would be able to seek forfeiture of any items that you might have an interest in.**
>
> . . .
>
> THE COURT: So **it is a very likely possibility that if you do have a house**, and it's your house, or you have an interest in a house **and you're not able to satisfy the money judgment, the United States may seek forfeiture of that property**[.]
>
> **So if you have a house, it's real property, the United States can't satisfy the judgment in some other way, it may seek to have that house forfeited as substitute assets.**
>
> . . .

> MR. HOWE [defense counsel]: If there's a money judgment, it's more steps involved, I guess, in satisfying that money judgment through assets that would include this house. That's the explanation. . . . [T]hat was a big negotiating point in this on a direct forfeiture versus a money judgment.
>
> . . .
>
> THE COURT: Thank you. **Mr. Nunley, did you wish to proceed, in light of the additional information that's been provided by the attorneys?**
>
> THE DEFENDANT: **Yes.**

DE #331, at 13-17 (emphases added). Mr. Bracke reiterated: "The defendant does understand that the United States has the right to attempt to enforce the money judgment against any his assets that we can locate, and that may include that real estate in the separate proceeding." *Id.* at 21. With one inapplicable exception, Defendant confirmed that "the plea agreement's been adequately explained to [him] and that [he] underst[ood] the terms and conditions of it[.]" *Id.* at 25.

So, Nunley fairly knew that by pleading guilty he would owe a $1.2 million+ judgment, representative of proceeds, and that the Government could seek to forfeit as substitute assets anything he owned if required to satisfy that judgment. Between rearraignment and sentencing, the United States included Pelham Place within a motion for preliminary judgment of forfeiture, which the Court granted. *See* DE ##235 (Notice of Filing); 238 (Preliminary Judgment of Forfeiture); 302 (Motion to Forfeit Substitute Assets); 303 (Virtual Order granting); 304 (Amended Preliminary Judgment of Forfeiture). That preliminary judgment became final under Rule 32.2, as to Nunley, at sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(A) ("At sentencing . . . the preliminary forfeiture order becomes final as to the defendant."); *United States v. Gallion*, 534 F.

App'x 303, 307-08 (6th Cir. 2013); *United States v. Schwartz*, 503 F. App'x 443, 447-48

(6th Cir. 2012).

> Sentencing confirmed these points again.
>
> MR. HOWE: It was understood [at rearraignment] that the mere fact that [1600 Pelham Place] was removed from the plea agreement did not remove it from the reaches of the government as far as execution on that asset. And it's not lost on [Nunley] either that that was cumulative versus substituted. In other words, it could have been a monetary judgment plus that building, whereas this building is going toward the actual monetary judgment.
>
> . . .
>
> MS. LEONHARD [the prosecutor]: Any allegation that the United States breached the plea agreement in this case is completely factually inaccurate. And I think that Mr. Howe admitted as much. **Mr. Nunley was apprised**, as he has been of all decisions that have been made in this case, **that despite that piece of property being removed from the forfeiture allegation, it was still susceptible to being leveraged as substitute assets for the money judgment that he agreed to.**

DE #330, at 7-8, 13 (emphases added). Nunley knew the substitute asset forfeiture had

already occurred. *See id.* at 7 (counsel noting it "troublesome" to Nunley that "the Court

signed a preliminary forfeiture judgment" involving the Pelham Place asset).

As the record conclusively demonstrates, the Government did not breach the plea

agreement by forfeiting 1600 Pelham Place. The plea agreement, signed by Nunley,

explicitly reserves to the United States the chance to seek property forfeiture—including

enforcement "against all assets, including this real estate"—to satisfy the money

judgment. The prosecutor, defense counsel, and the Court orally confirmed this at

rearraignment and sentencing. Movant's contrary argument is baseless and fails.[3]

---

[3] In the reply, Nunley argues that the Court should look to what he "reasonably understood" when he entered the plea agreement. DE #398, at 4 (citing *United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014)). He ignores the decision's next sentence: "The most persuasive evidence of what a defendant reasonably appreciated as his bargain is

2.      The Government Did Not Breach the Plea Agreement by Stating Such Forfeiture Would Occur in a Separate Proceeding (Argument 2)

Nunley next argues that the Government violated the plea agreement "by informing Nunley that any forfeiture of real estate would occur in a separate proceeding where he could contest any forfeiture[.]" DE ##388-1, at 4-5 (emphases removed); 388, at 5. The United States responded in opposition. DE #397, at 8. Nunley replied. DE #398, at 5-6, 8.

Mr. Bracke stated, "We agreed we're going to drop a specific claim for that real estate. However, as the Court has already indicated, in an effort to enforce the money judgment, what we'll do is find assets, and there might be a lien attached to this. If there is, Mr. Nunley can deal with that. That's a separate proceeding, and we can deal with that then." DE #331, at 13.

Nunley's argument fails for two independent reasons. First, and primarily, Nunley admitted that the plea agreement was the only agreement he had with the United States, DE ##317, at ¶ 11 ("This document and the sealed supplement contain the complete and only Plea Agreement between" the United States and Defendant.); 331, at 18 (post-Bracke statement, Defendant agreeing that "this [written plea agreement] is the only agreement you have with the government in the case"); *id.* at 25 (Defendant affirming that there were "no outside promises" and that no threats induced him to sign the plea agreement), and the prosecutor's oral statement at rearraignment did not amend the plea agreement. *Cf. United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004) (incorrect

---

found in the plain language of the court-approved agreement." 763 F.3d at 453 (internal quotation marks removed). Here, the agreement's plain language unambiguously permitted the Government to pursue 1600 Pelham Place—indeed, any of Nunley's assets—to satisfy the money judgment.

13

oral statement concerning appeal rights could not overcome plea agreement appeal waiver); *United States v. Wells*, 211 F.3d 988, 994-95 (6th Cir. 2000) (oral statements could not overcome text of plea agreement, which was the entire agreement between the United States and Defendant).

Second, Mr. Bracke's statement itself is distinctly indeterminate. As an initial matter, it makes no promise to Nunley. It simply states, as fact, "That's a separate proceeding[.]" Further, it is not clear to what "[t]hat" refers. Textually, it appears "[t]hat" refers to Nunley "deal[ing] with that." This "that[,]" in turn, appears to refer to procedures connected to lien proceedings. Alternatively, it is possible, in context, to interpret "[t]hat" to refer to forfeiture of 1600 Pelham Place. Under this interpretation, Mr. Bracke certainly did not state what "proceeding" he contemplated. Perhaps he intended some ancillary in-court hearing; perhaps not. Forfeiture of the property was conducted via proceedings separate from the plea in the case. *See* DE ##304, 336. Rule 32.2(b)(1)(B) requires a hearing if the forfeiture is contested, but Nunley did not contest the filings related to forfeiture of the property. Additionally, "the court must conduct an ancillary proceeding" "[i]f . . . a third party files a petition asserting an interest in the property to be forfeited," but no third party filed. *See* Fed. R. Crim. P. 32.2(c)(1).

Mr. Bracke's ambiguous statement's meaning is unclear and, regardless, did not amend or become part of the plea agreement. The Government plainly did not breach the plea agreement by making the statement or by the manner of forfeiture. Nunley's argument fails.[4]

---

[4] To the extent Nunley independently alleges plea agreement breach based on Mr. Bracke's "[i]t's not his responsibility to raise a million dollars" statement, the argument is baseless. The prosecutor made the statement in the context of (1) explaining that money judgment satisfaction would not be a condition of supervised release, and (2) stating the

C.      *21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2*

1.      The Government Followed the Law (Argument 3)

Movant next argues that the Government violated 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2. DE ##388-1, at 5-6; 388, at 6. The Government argues that procedural default bars the Court's consideration of this claim and argument 5 (and alternatively responds in opposition on the merits). DE #397, at 7-8 n.3. Nunley replied that he "could not have objected to something that had yet to occur" at the time of sentencing. DE #398, at 7. Nunley separately replied regarding the claim generally. *Id.* at 6-7. The Court previously determined that Nunley's collateral attack waiver is an independent reason to dismiss this claim.

"Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Id.* Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The procedural default doctrine only bars "claims that could have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

---

efforts the United States would make to satisfy the money judgment. DE #331, at 14-15. He stated that "[w]e [the United States] have to try to find that money to satisfy" the money judgment. *Id.* Any Nunley asset was and is a potential collection target.

Here, it is clear that Defendant raised neither this nor the joint and several liability argument on appeal. Both are plainly procedurally defaulted. First, Nunley filed his notice of appeal on October 11, 2012. DE #320. The Court entered the Final Decree and Order of Forfeiture, forfeiting 1600 Pelham Place, on March 20, 2013, over five months later. DE #336. However, the Court ordered, adjudged, and decreed on September 6, 2012—pre-sentencing—that 1600 Pelham Place was a substitute asset for the $1,230,000 money judgment. DE #304 (Amended Preliminary Judgment of Forfeiture). Judge Reeves made this preliminary judgment final—as to Nunley—at sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(A). Further, "[i]f the court later amends . . . a forfeiture order to include additional property under Rule 32.2(e), the defendant . . . may file an appeal regarding that property . . . . The time for that appeal runs from the date when the order granting . . . the amendment becomes final." Fed. R. Crim. P. 32.2(b)(4)(C). Nunley could have objected to DE #304 at motion filing or at sentencing (and later on appeal) but did not. A § 2255 motion is not an appeal substitute. He has made no attempt to show good cause and prejudice, or that he is actually innocent. As earlier noted, he plainly was aware of the Pelham forfeiture at sentencing. Nunley defaulted the claim. The Court further notes that Nunley does not independently challenge the Final Decree and Order of Forfeiture in the § 2255 motion; instead, he challenges forfeiture propriety while alleging plea agreement breach and IAC claims.

Second, Nunley makes the categorical argument that "§ 853 does not authorize joint liability forfeitures[.]" DE #388-1, at 9 (emphases removed). He knew, at the time of judgment, that the Court imposed joint and several liability for the amount of the money judgment. DE #319, at 6. He nevertheless did not challenge this aspect of the

Judgment on appeal. As above, Nunley has made no attempt to show good cause and prejudice, or that he is actually innocent. Section 2255 proceedings are not a substitute for direct appeal; Nunley thus also defaulted this claim. However, because both claims also substantively fail, the Court alternatively analyzes the merits.

When the United States pursues substitute assets to satisfy a money judgment, the Government must comply with § 853(p). *United States v. Abdelsalam*, 311 F. App'x 832, 847 (6th Cir. 2009). The statute provides, in relevant part, "In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of **any other property of the defendant**, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable." 21 U.S.C. § 853(p)(2) (emphasis added). Because the amount of the money judgment, which meets the requirements of § 853(a), "cannot be located upon the exercise of due diligence[,]" at the least,[5] the paragraph 1 predicate is satisfied.[6] *Id.* § 853(p)(1)(A).

Rule 32.2, in turn, contemplates "a personal money judgment" and, if the Government seeks one, requires the Court to "determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). Nunley only cites and alleges deficiency under Rule 32.2(e). "On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include

---

[5] Nunley admitted under oath that he "do[es]n't have a million dollars." DE #331, at 14. Additionally, the record suggests that title for 1600 Pelham Place nominally vested in Dalemonta Nunley "after [the property] was named in an indictment." *Nunley*, 559 F. App'x at 471; *see also* DE #336. The Final Decree and Order of Forfeiture describes the Marshal's thorough but unsuccessful efforts to notify Dalemonta Nunley. DE #336; *see also* 21 U.S.C. § 853(c).
[6] The Superseding Indictment's forfeiture allegation listed both 1600 Pelham Place and a $1,920,000 money judgment. DE #76, at 12-13.

property that . . . is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1)(B).

Nunley challenges the underlying forfeitability of 1600 Pelham Place.  DE #388-1, at 5-6. His argument confuses direct forfeiture with substitute asset forfeiture to satisfy a personal money judgment. Movant agreed to "forfeit to the United States all interest in the property listed in the forfeiture allegation of the Superseding Indictment[,]" amended down to a $1,230,000 money judgment representative of proceeds. DE #317, at ¶ 8. He understood that the Government may "attempt to enforce the money judgment against **all assets**, including" 1600 Pelham Place. *Id.* (emphasis added). As discussed thoroughly at rearraignment, the United States dropped its request for direct forfeiture of the property. "The understanding that the real estate was not separately forfeited but could be used toward the money judgment was reiterated during plea proceedings." *Nunley*, 559 F. App'x at 471.

The Court found that the $1,230,000 money judgment "represents the gross proceeds in aggregate obtained by the defendants Vincent Nunley and James Holt, as a result of drug trafficking[.]" DE #319, at 6; *see also* DE ##238 (same, pre-sentencing); 304 (same, and listing 1600 Pelham Place as the substitute asset). Nunley does not challenge this finding. Indeed, Nunley admitted he sold a kilo+ of coke to Holt every other month for six years. *See* DE #317, at ¶ 3(c). Because the money judgment represented drug trafficking proceeds, the Government could satisfy it, if Nunley could not pay, using any Defendant asset(s). The Government did not have to tie the substitute asset(s) to drug trafficking. *United States v. Erpenbeck*, 682 F.3d 472, 477 (6th Cir. 2012) (describing substitute assets as "untainted property that the government may seize to

18

satisfy a forfeiture judgment if the tainted property is unavailable"); *United States v. Coffman*, 574 F. App'x 541, 562-63 (6th Cir. 2014); *see United States v. Parrett*, 530 F.3d 422, 424 (6th Cir. 2008) ("Substitute assets, as defined by 21 U.S.C. § 853(p), are not directly traceable to the underlying offenses for which Parrett was indicted, but could be used to satisfy a judgment under certain circumstances[.]"); *see also, e.g.*, *United States v. Day*, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008). "Based on this record, it was not error for the district court to order the forfeiture of 'other property of the defendant,' § 853(p), up to the amount described in the money judgment." *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (cited in *Abdelsalam*, 311 F. App'x at 847).[7] The Government did not breach § 853 or Rule 32.2[8] by successful pursuit of the Pelham Place asset.[9]

> 2.    § 853(p) Authorizes (Mandates) Joint and Several Liability (Argument 5)

Next, Nunley argues that "21 U.S.C. § 853 does not authorize joint liability forfeitures and counsel rendered ineffective assistance . . . by allowing it in this case and

---

[7] Nunley makes two references to his "due process rights" in this section. DE #388-1, at 5-6. To the extent he argues that his "due process rights . . . w[ere] violated[,]" *id.* at 5, his statute- and Rule-breach arguments fail, and he identifies no further ground for a due process violation. *See also id.* at 6 (arguing a 5th Amendment violation premised on breach of § 853(p) and Rule 32.2). The claim thus also fails.

[8] The motion to substitute, DE #302, may not have tracked perfectly all § 853(p) or Rule 32.2(e)(2) elements. However, Nunley knew of the forfeiture at sentencing (Judge Reeves not only included the monetary judgment directly in the judgment, he also orally referenced the amended judgment during the sentencing itself). DE #330, at 24; Fed. R. Crim. P. 32.2(b)(4). Again, Nunley admitted he did not have the funds to meet the agreed judgment, and he knew the effect of that status on his other property. He knew the amendment expressly enveloped Pelham Place. That Nunley did not object to the mechanics or appeal the decision is not surprising and simply reflects that his lawyers did what they reasonably could in a scenario with no good options for protecting any specific asset of Movant.

[9] In this context, Rule 32.2(e)(1)(B)'s "applicable statute" is § 853(p). 1600 Pelham Place is "property that . . . is substitute property that qualifies for forfeiture under [§ 853(p)(2).]" Fed. R. Crim. P. 32.2(e)(1)(B).

not objecting to it in the lower court and on appeal[.]" DE #388-1, at 9-10 (emphases removed). He premises the argument on § 853(a)'s use of the word "person". The United States responded in opposition. DE #397, at 7-8 n.3. Nunley replied. DE #398, at 11-12.

As explained above, the Court independently dismisses this argument based on both collateral attack waiver and procedural default. Nunley knew, upon Judgment entry, that he was jointly and severally liable with Holt for the money judgment but did not object or challenge this on appeal. He is barred from bringing the argument now in a § 2255 motion. Alternatively, the Court assesses the merits.

Jointly-convicted defendants are jointly and severally liable for the entire amount of gross proceeds of drug trafficking as expressed in the Court's money judgment. *See United States v. Logan*, 542 F. App'x 484, 498-99 (6th Cir. 2013) ("Again, the Sixth Circuit has not addressed this issue. However, it appears that the circuits that have addressed the issue have concluded that the statute mandates joint and several liability among coconspirators for the proceeds of a drug conspiracy.") (collecting cases); DE #253, *United States v. Evans*, No. 0:13-CR-22-DLB (E.D. Ky. Jan. 12, 2015) ("[E]very circuit that has addressed the issue has concluded that § 853 imposes mandatory joint and several liability among all conspirators in a drug conspiracy."). *E.g.*, *United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011) (§ 853(a)(1)'s "mandatory liability is joint and several among all conspirators.") (relying, ultimately, on the statute's construction in *United States v. Benevento*, 663 F. Supp. 1115, 1118 (S.D.N.Y. 1987) (The statute "is not limited to property acquired solely or wholly by the defendant but encompasses property derived by the defendant indirectly from those who acted in concert with him in furthering the criminal enterprise and produced the property derived from the violation.

20

Once it is established that the defendant received the proceeds sought to be forfeited it matters not whether his actions produced the entire property or a portion thereof. The entire proceeds of the illicit property found in his possession and derived from the criminal enterprise is subject to forfeiture. . . . [T]he sweep of the statute is broad enough to impose joint and several liability upon those who engaged in and furthered the criminal enterprise that produced the funds subject to forfeiture.")). The Fourth Circuit explicitly rejected Nunley's textual "person" argument based on the statute's use of "indirectly." *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996) ("Section 853(a)(1) provides for the forfeiture of tainted property 'obtained, directly *or indirectly*' from a[n applicable offense] by any person convicted of a[n applicable] offense. (Emphasis added). Construing that section liberally, *see* 21 U.S.C. § 853(o), it is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise." (alterations added)). Nunley's contrary argument is contradicted by harmonious case law, does not succeed, and would not have succeeded if raised elsewhere procedurally.

              D.     *Ineffective Assistance of Counsel*

Nunley finally alleges various IAC claims. When asserting ineffective assistance, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).[10] In the sentencing context, ineffective assistance "can result in *Strickland* prejudice because any amount of additional jail time has Sixth Amendment significance." *Id.* at 1386 (internal quotation marks, alteration, and citation omitted).

---

[10] *Lafler* was a § 2254 case, but the analysis also applies to a § 2255 *Strickland* theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.").

1.     Counsel Was Not Ineffective for Failing to Argue Breach (Argument 4)

Nunley argues that "[c]ounsel rendered ineffective assistance by not arguing breach of plea when it occurred and on appeal." DE ##388, at 8; 388-1, at 7-9. The United States responded in opposition. DE #397, at 8-10. Nunley replied. DE #398, at 10-11.[11]

Because the Court rejects, on the merits, Nunley's breach of plea agreement arguments, counsel, perforce, did not deficiently perform by not raising the groundless claims. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments."); *Walls v. Romanowski*, No. 2:06-CV-14203, 2013 WL 210735, at *7 (E.D. Mich. Jan. 18, 2013) ("Counsel is not required to raise meritless objections, and appellate counsel is not required to raise meritless claims."). Nunley has not demonstrated plea agreement breach; this connected IAC claim—both as to counsel's actions in the district and circuit courts—derivatively fails.[12]

---

[11] To the extent Nunley raises ineffective assistance of appellate counsel claims in any of his arguments, "[u]nder the *Strickland* standard—as modified for IAAC claims—a petitioner is entitled to habeas relief if he can show two things: (1) appellate counsel was objectively unreasonable in failing to find non-frivolous, arguable issues to appeal; and (2) a reasonable probability that, but for counsel's error, his appeal would have prevailed." *Sanders v. White*, No. 03-455-ART, 2015 WL 711262, at *68 (E.D. Ky. Feb. 18, 2015) (citing *Smith v. Robbins*, 120 S. Ct. 746, 764-65 (2000)); *see also Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* standard to a § 2255 IAAC claim); *Sullivan v. United States*, 586 F. App'x 935, 948 (6th Cir. 2014) (same); *Williams v. United States*, No. 2:13-CV-1124, 2015 WL 3867257, at *4 (S.D. Ohio June 23, 2015) (applying modified standard to a § 2255 motion). Because none of Nunley's claims has merit, Movant does not satisfy either (at least semantically) modified IAAC prong on any argument. Nunley does not show that appellate counsel acted objectively unreasonably or that, but for any alleged error, his appeal would have prevailed.

[12] Regarding Nunley's claims of ineffective assistance in general, Nunley confirmed that his trial level representation "couldn't get [any] better." DE #331, at 9.

The truth is, the Plea Agreement creates only marginal protection for the Pelham Place asset. Counsel negotiated removal of the property as directly forfeited. There was little else the lawyer could do. The conceded proceeds total created a large personal judgment Nunley could not pay. This opened the door for a substitute assets theory—precisely what Judge Reeves carefully explained *before* Nunley pleaded guilty. The Plea Agreement protection thus only added a procedural hurdle or two along a path to the same outcome. Nunley does not quibble with the merits of his guilt or the irresistible mathematics of the forfeiture equation. Counsel, at both levels, did not act ineffectively for not engaging in a futile effort.

2.      Counsel Was Not Ineffective for Failing to Argue a Proceeds / Profits Distinction (Argument 6)

Movant next argues that "[c]ounsel rendered ineffective assistance . . . by not arguing that 'proceeds' means 'profits' under § 853, *Santos*,[13] and the rule of lenity[.]" DE #388-1, at 10-11 (emphases removed; italics and footnote added). Nunley argues that *Santos*'s definition of "proceeds" "applies to § 853 and Nunley's criminal forfeiture." *Id.* at 10. Nunley also invokes the rule of lenity. *Id.* at 11 (citing *United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009)). The United States responded in opposition. DE #397, at 8-9. Nunley replied. DE #398, at 9-10.

"[O]ther circuits have concluded that the term "proceeds" in [§ 853] refers to gross proceeds, not merely net profits." *Logan*, 542 F. App'x at 498 (citing cases, finding "the reasoning of these courts persuasive[,]" and concluding "that the district court was correct in its holding that gross proceeds should determine the baseline for calculating the amount of the forfeiture"). *Santos* only addressed the meaning of "proceeds" in the

_____

[13] *United States v. Santos*, 128 S. Ct. 2020 (2008).

federal money-laundering statute, 18 U.S.C. § 1956(a)(1), *see* 128 S. Ct. at 2022 (plurality opinion), which is not at issue here. The *Santos* limitation does not apply to § 853. *See, e.g.*, *United States v. Heilman*, 377 F. App'x 157, 210-12 (3d Cir. 2010) ("This is where § 853(a) diverges from the analysis of 18 U.S.C. § 1956(a)(1) in *Santos*. If we were to define 'proceeds' as profits, we would render the term superfluous because another provision in § 853(a) permits imposition of a fine against a defendant who 'derives profits or other proceeds' in an amount 'not more than twice the gross profits or other proceeds.' 21 U.S.C. § 853(a). If 'proceeds' means profits, then the fine would be imposed against a defendant who 'derives profits or other [profits]' and could be no greater than 'twice the gross profits or other [profits],' rendering the provision redundant. Because we cannot define a statutory term in a manner which renders it superfluous, we conclude that 'proceeds' in § 853(a) means 'receipts.' . . . Contrary to [Defendant]'s argument, we are not bound by the Supreme Court's holding in *Santos*. Most notably, the Court was interpreting a different statute in a different section of the United States Code. . . . Further, a term with multiple meanings does not always retain its definition from one statute to another."); *accord United States v. Olguin*, 643 F.3d 384, 399-400 (5th Cir. 2011); *United States v. Bucci*, 582 F.3d 108, 122-24 (1st Cir. 2009); *see also Santos*, 128 S. Ct. at 2024 (plurality opinion) (noting that "proceeds" "has not acquired a common meaning in the provisions of the Federal Criminal Code" and that § 853 "leave[s] the term undefined").

The rule of lenity also does not compel Nunley's reading of the statute. The rule "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal." *United States v. R.L.C.*, 112 S. Ct. 1329, 1340 (1992); *see also Ford*, 560 F.3d at

25

425 (applying the rule of lenity "[w]hen ambiguity clouds the meaning of a criminal statute"). It does not apply to require the interpretation of § 853 that Nunley suggests. *See Heilman*, 377 F. App'x at 211 ("*Santos* invoked the rule of lenity in interpreting a criminal statute, . . . whereas § 853 is a criminal forfeiture provision and does not define a substantive criminal offense, . . . and it instructs courts that its "provisions . . . shall be liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o)[.]"). Case law is united that "proceeds" in § 853 does not merely refer to "profits"; there is no cloud of ambiguity to lift through application of the rule, and, regardless, § 853 is not a substantive criminal statute that renders conduct illegal. The claim wholly fails.

Because the Court rejects, on the merits, Nunley's proceeds-means-profits and rule of lenity arguments, counsel plainly did not deficiently perform by not raising the groundless claims. *Mapes*, 171 F.3d at 427 ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments.")

> 3.    Counsel Was Not Ineffective for Stating that 1600 Pelham Place Was Subject to Direct Forfeiture (Argument 7)

Finally, Nunley argues that "[c]ounsel . . . rendered ineffective assistance . . . by informing Nunley that his property at 1600 Pelham Place was subject to direct forfeiture under 21 U.S.C. § 853[.]" DE #388-1, at 12-13. He further states, "Competent counsel would also have not put Nunley in a situation where he stipulated to a money judgment that then allowed the government to seize the very property that was not even subject to direct forfeiture under § 853." *Id.* at 12. The United States responded in opposition. DE #397, at 9.

Nunley provides no specifics regarding any alleged statement where Mr. Howe informed him that 1600 Pelham Place was subject to direct forfeiture. Nunley does not

explain how the act of making the statement—which, if true, at least by the end of the case, did not reflect the reality that Nunley faced—establishes ineffective assistance. In fact, after plea negotiations, the United States withdrew its request for direct forfeiture and *reduced* its money judgment request (creating a poor climate for lawyer criticism here).[14] 1600 Pelham Place was *not* directly forfeited. Even if Mr. Howe stated that it was subject to direct forfeiture (which the Court by no means can conclude; Nunley provided no details), Nunley fails, in any way, to establish that the statement constituted deficient performance when direct forfeiture conclusively did not occur (thus precluding a finding of prejudice).

Nunley also argues that competent counsel would not have permitted him to stipulate to a money judgment that would enable the Government to seize property not subject to direct forfeiture. The argument wholly fails. First, the United States *reduced* the money judgment amount, of doubtless benefit to Nunley. Second, Nunley himself agreed in the plea agreement to "forfeit to the United States . . . a money judgment [in] the amount of $1,230,000[.]" DE #317, at ¶ 8. Defense counsel "fully explained th[e] Agreement to the Defendant, and . . . the Defendant's entry into th[e] Agreement [wa]s voluntary." *Id.* ¶ 13. Nunley confirmed at rearraignment that he wished to proceed with pleading guilty after hearing forfeiture possibilities and mechanics fully explained. DE #331, at 17. Judge Reeves, who personally confirmed the risk to all Nunley property and detailed the mechanics, found the plea to be knowing and voluntary. *Id.* at 36. Nunley

---

[14] The prosecutor confirmed that this reduction was due to Mr. Howe's efforts. DE #331, at 12 ("That's one of the topics Mr. Howe has, on behalf of Mr. Nunley, presented to us and given us reasons to take a harder look at relevant conduct[.]"). The Court stated its understanding that "the United States is giving counsel's argument, defendant's argument more credence . . . which reduces the drug quantity and also reduces the money judgment that would be attributable to the amount of drugs." *Id.* at 12-13.

was fully aware of forfeiture procedures and options, and he affirmatively chose to plead guilty. Mr. Howe thoroughly explained the difference between direct and substitute forfeiture at rearraignment, and Nunley raised no objection to proceeding. *Id.* at 16-17. Mr. Howe proffered extensively at sentencing, again reiterating Nunley's general disagreements with the forfeiture process. DE #330, at 5-11. Nunley allocuted and again expressed general frustration, but did not seek to withdraw his plea. *Id.* at 11-12. Nunley agreed to a reduced money judgment, avoided direct property forfeiture, and expressly stated his understanding that 1600 Pelham Place—indeed, any of his assets—was or were subject to forfeiture to satisfy the money judgment. He does not now provide any basis for the Court to conclude that the money judgment amount is unsupported by case evidence. Again, Movant admitted to selling a kilo+ of cocaine every other month for a six-year term; he does not *factually* impugn the foundation for the forfeiture total, and Nunley has the proof burden here. The defense negotiated away direct property forfeiture in lieu of a (lowered) money judgment, and Nunley understood that any asset, including 1600 Pelham Place, could be forfeited to satisfy the money judgment. Nunley knowingly and voluntarily agreed to this arrangement and pleaded guilty. His IAC claim is baseless and fails.[15] He establishes neither deficient performance nor resulting prejudice.

---

[15] Because the Court rejects arguments 1, 2, 3, and 5, it correspondingly rejects the IAC claims that Nunley grafted onto them. To the extent Nunley raises an IAC claim regarding argument 8, the Court also rejects it. He seems to have made the ineffective assistance allegations not as substantive charges, but rather as attempts to explain why he did not raise the issues on direct appeal. To the extent they are separate IAC claims, the theories are premised on underlying fault, which plainly does not exist in these circumstances. Because there are no underlying violations, counsel did not deficiently perform regarding these claims, and Nunley makes no showing of prejudice for all of the reasons stated.

E.      *Evidentiary Hearing*

Nunley requests an evidentiary hearing. DE #388-1, at 13. The Court must hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). None of Nunley's claims warrants a hearing; the § 2255 motion filings and record of the case conclusively show, for the reasons stated above, that Nunley's claims fail. The record, which needs no further development and raises no contested factual issues of consequence to the motion, forecloses relief.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should

issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; each of his claims conclusively fails. Reasonable jurists would not find the Court's determination on the merits debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.      RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #388) and issue **NO** Certificate of Appealability.

\*   \*   \*   \*   \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 3d day of November, 2015.

Signed By:

**_Robert E. Wier_**

**United States Magistrate Judge**